# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID WALLACE HREHA,

        Defendant-Appellant.

UNPUBLISHED
April 21, 2016

No. 324389
Berrien Circuit Court
LC No. 2013-016446-FC

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of second-degree criminal sexual conduct, MCL 50.520c(1)(a), and two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a). The victims of defendant's criminal sexual conduct were KH, WE, and MJ. These boys, each under the age of 13, were neighbors to defendant and often worked for defendant by cleaning his yard. For the reasons below, we affirm.

## I. EVIDENTIARY ISSUES

### A. PRIOR INCIDENTS OF SEXUAL ABUSE

On appeal, defendant first argues that the trial court erred by excluding evidence of an incident in which WE was sexually abused by a cousin. We review a trial court's evidentiary decisions for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. at 217. "Preliminary questions of law, such as whether a rule of evidence, constitutional provision, or statute precludes the admission of the evidence, are reviewed de novo." *People v Jones*, 270 Mich App 208, 211; 714 NW2d 362 (2006).

The rape-shield statute, MCL 750.520j, is a general exclusionary rule; it bars, with two narrow exceptions, all evidence of a victim's sexual activity not incident to the alleged sexual assault. *People v Adair*, 452 Mich 473, 478; 550 NW2d 505 (1996). However, in limited circumstances, admission of evidence of a victim's sexual activity may nonetheless be required to preserve a defendant's constitutional rights, including the right of confrontation. *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984). A defendant may introduce evidence of a prior incident of sexual abuse of a victim to show that the victim's age-inappropriate sexual knowledge was not learned from the defendant. *People v Morse*, 231 Mich App 424, 436; 586

-1-

NW2d 555 (1998). For evidence of a prior incident to be admissible, however, the facts underlying the incident must be "significantly similar" to the allegations in the present case. *Id*. at 437. If the facts of the prior incident are not "significantly similar," the exclusion of evidence regarding the prior incident does not violate a defendant's right of confrontation and right to present a defense. *People v Duenaz*, 306 Mich App 85, 90-93; 854 NW2d 531 (2014).

The incident between WE and his cousin did not embody all the sexual acts that WE claimed defendant committed against him. In the prior incident, the cousin penetrated WE's anus with his penis. In this case, WE testified that defendant's penis penetrated his anus, but WE also testified that defendant touched WE's penis with his hands and that defendant put WE's penis in his mouth and sucked it. The prior incident did not account for many sexual details unique to the charged conduct, so the previous incident could not fully explain the knowledge displayed by WE. See *Morse*, 231 Mich App at 434. Additionally, WE was 11 years old at trial, and we cannot disagree with the trial court's statement that it would be speculation to conclude that WE's sexual knowledge was inappropriate for his age. See *Duenaz*, 306 Mich App at 93. Further, defendant must show that the prior incident resulted in the conviction of another person. *Morse*, 231 Mich App at 437. Although WE's cousin was charged in the prior incident, he was never convicted because the court dismissed the charges after finding him incompetent to stand trial. Under these circumstances, the trial court's decision to exclude evidence of the incident between WE and his cousin fell within the range of reasonable and principled outcomes.

## B. CHILD'S STATEMENT ABOUT SEXUAL ABUSE

Defendant next argues that the trial court erred when it allowed MJ's mother to testify about a statement that MJ made while they were making a trip to Walmart with WE. According to defendant, evidence of MJ's statement was not admissible under MRE 803A because it was not spontaneous. We review the trial court's decision for an abuse of discretion. *Unger*, 278 Mich App at 216.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless it falls within an exception to the hearsay rule. MRE 802; *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). MRE 803A codified the common-law "tender years" exception to the hearsay rule. *People v Douglas*, 496 Mich 557, 573; 852 NW2d 587 (2014). Under MRE 803A, "[a] statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided," in part, "the statement is shown to have been spontaneous and without indication of manufacture."[1] "The question of spontaneity, at its essence, asks whether the statement is the creation of the child or another." *Gursky*, 486 Mich at 613.

---

[1] There are several other requirements for the admission of a hearsay statement under MRE 803A. We do not address those requirements, however, because defendant only challenges the trial court's conclusion that MJ's statement to his mother was spontaneous.

MJ's statement to his mother that defendant touched his privates was the result of questioning by MJ's mother. In *Gursky*, 486 Mich at 614, our Supreme Court addressed the admissibility of a child's statement that was the result of questioning, and held that "the mere fact that questioning occurred is not incompatible with a ruling that the child produced a spontaneous statement." However, for the statement to be admissible, "the child must broach the subject of sexual abuse, and any questioning or prompts from adults must be nonleading or open-ended in order for the statement to be considered the creation of the child." *Id*. Our Supreme Court further explained the following:

> To be clear, we do *not* hold that any questioning by an adult automatically renders a statement "nonspontaneous" and thus inadmissible under MRE 803A. Open-ended, nonleading questions that do not specifically suggest sexual abuse do not pose a problem with eliciting potentially false claims of sexual abuse. But where the initial questioning focuses on possible sexual abuse, the resultant answers are not spontaneous because they do not arise without external cause. When questioning is involved, trial courts must look specifically at the questions posed in order to determine whether the questioning shaped, prompted, suggested, or otherwise implied the answers. [*Id*. at 614-615 (footnote omitted).]

This approach requires courts to review the totality of the circumstances surrounding the statement in order to determine whether the statement was spontaneous. *Id*. at 615.

MJ broached the subject of sexual abuse. In response to WE's question whether he could go to defendant's house, MJ unexpectedly said that defendant was a sex offender. Although MJ's statement that defendant was a sex offender did not specifically indicate that defendant had sexually abused MJ, it implied that defendant had engaged in some type of improper sexual conduct. MJ's mother then asked MJ questions, including what he meant, how he knew that defendant was a sex offender, and whether anything happened to him. These questions were nonleading and open-ended; they did not suggest sexual abuse. In response to these questions, MJ put his head down and said no. It was only when MJ's mother asked him a second time if anything happened, after indicating that he could tell her anything and would not be in trouble, that MJ said that defendant had touched his privates. Under these circumstances, in which MJ broached the subject of sexual abuse, but then denied that anything happened with defendant until his mother asked him additional nonleading and open-ended questions, it may be considered a close question whether MJ's statement that defendant touched his privates was spontaneous. A trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011). Accordingly, we conclude that the trial court's decision that MJ's statement was spontaneous fell within the range of reasonable and principled outcomes and the trial court did not abuse its discretion by admitting the testimony.

## C. AVAILABILITY OF CHILD WITNESS

Next, defendant argues that the trial court erred by finding that MJ was unavailable as a witness under MRE 804(a)(3) and by admitting MJ's preliminary examination testimony into evidence. We agree. We review a trial court's evidentiary decisions for an abuse of discretion, but review a trial court's factual findings regarding the unavailability of a witness under

MRE 804(a) for clear error. *People v Sardy*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 319227); slip op at 4. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

MRE 804(b) sets forth numerous exceptions to the hearsay rule that apply when a declarant is unavailable as a witness, *People v Duncan*, 494 Mich 713, 724; 835 NW2d 399 (2013), and one of the exceptions is for former testimony. MRE 804(b)(1). MRE 804(a) defines when a declarant is unavailable as a witness, which includes when a declarant "has a lack of memory of the subject matter of the declarant's statement." MRE 04(a)(3). In *Sardy*, ___ Mich App at ___; slip op at 5, this Court concluded that a trial court did not err by finding that a victim was unavailable under MRE 804(a)(3) when the victim, upon being asked about the defendant's conduct that was the basis for the charges, said that she could not remember what happened.

In this case, however, the trial court clearly erred by finding that MJ was unavailable as a witness. To have been unavailable under MRE 804(a)(3), MJ must have had "a lack of memory *of the subject matter* of the declarant's statement." (Emphasis added.) The subject matter of MJ's former statement was the incident in which defendant inappropriately touched MJ in the building behind defendant's house. At trial, MJ did not indicate that he lacked memory regarding this incident. Rather, MJ testified that he was watching television while sitting on defendant's lap in the building when defendant used his hands to touch MJ's penis over his clothes. Because MJ did not lack memory regarding the incident, we are left with a definite and firm conviction that the trial court made a mistake by finding that MJ was unavailable under MRE 804(a)(3). Consequently, the trial court abused its discretion by admitting MJ's preliminary examination testimony under MRE 804(b)(1).

"[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted). MJ's testimony at the preliminary examination was cumulative of his trial testimony, except that at the preliminary examination, MJ testified that defendant's hand went into his pants and touched his penis. Regardless of whether defendant touched MJ's penis or the clothes over it, he could be convicted of second-degree criminal sexual conduct under MCL 750.520c. "Sexual contact" for purposes of MCL 750.520c "includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts . . . ." MCL 750.520a(q). Although MJ's preliminary examination testimony may have bolstered his credibility, despite containing an inconsistency, because it showed that MJ previously testified that defendant touched his penis, other evidence also bolstered MJ's credibility. Specifically, MJ's mother testified that MJ told her defendant touched his privates, and the testimony of KH and WE showed defendant's propensity and character to commit the charged crime. See MCL 768.27a; *People v Watkins*, 491 Mich 450, 491-492; 818 NW2d 296 (2012). Under these circumstances, defendant has not shown that it appears more probable than not that the erroneous admission of MJ's preliminary examination testimony was outcome determinative.

Defendant also claims that the trial court erred when it allowed the prosecution on rebuttal to ask WE about his preliminary examination testimony. We decline to address this issue. All the legal authority that defendant cites in his argument concerns MRE 804(a)(3), but it is clear from a review of the record that the trial court did not rely on MRE 804 as the basis for allowing WE to testify about his preliminary examination testimony. Rather, the trial court allowed WE to testify about his preliminary examination testimony because it concluded that, after defendant tried to impeach WE with a prior inconsistent statement, the prosecution was entitled to show that WE's prior statement was not inconsistent with his trial testimony. Defendant does not address the trial court's stated reason for allowing WE to testify about his preliminary examination testimony, so he has abandoned this argument. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

## D. EXPERT TESTIMONY

Next, defendant argues that error occurred when Barbara Welke, the prosecution's expert in forensic interviewing and disclosures of sexually abused children, testified that the behaviors and actions of KH, WE, and MJ during their interviews at the Children's Assessment Center (CAC) were consistent with those of sexually abused children and that it was not odd for sexually abused children to want to spend time with their abusers. We review this unpreserved claim of evidentiary error for plain error affecting defendant's substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

In *People v Peterson*, 450 Mich 349; 537 NW2d 857, amended 450 Mich 1212 (1995), our Supreme Court clarified the permissible scope of expert testimony in child sexual abuse cases. "An expert may testify regarding typical symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim *or* to rebut an attack on the victim's credibility." *Id*. at 373. The prosecution may present expert testimony to explain common postincident behavior of sexually abused children. *Id*. "This expert testimony, however, may be introduced only if the facts as they develop would raise a question in the minds of the jury regarding the specific behavior. The behavior must be of such a nature that it may potentially be perceived as that which would be inconsistent with a victim of child sexual abus" *Id*. at 373 n 12. Generally, "[u]nless a defendant raises the issue of the particular child victim's postincident behavior or attacks the child's credibility, an expert may not testify that the particular child victim's behavior is consistent with that of a sexually abused child." *Id*. at 373-374 (footnote omitted). "The credibility of the victim is attacked when the defendant highlights behaviors exhibited by the victim . . . and alludes that the victim is incredible because of [those] behaviors." *Id*. at 374 n 13.

Welke's testimony that the behaviors and actions of KH, WE, and MJ during their CAC interviews were consistent with those of sexually abused children constitutes plain error. See *Benton*, 294 Mich App at 202. There is no indication that the jurors would potentially perceive the victims' behaviors during the interviews as being inconsistent with a child abuse victim. Also, defendant did not attack the victims' credibility by alluding that they were incredible because of their behaviors and actions during the interviews. Accordingly, the testimony did not fall within the permissible scope of expert testimony in a child sexual abuse case, and Welke was

prohibited from testifying that the victims' behaviors and actions were consistent with those of child sexual abuse victims. See *Peterson*, 450 Mich at 373-374.

However, this error did not affect defendant's substantial rights. See *Benton*, 294 Mich App at 202. Welke's improper opinion was never repeated during trial, and neither the prosecution nor defendant ever argued that the victims' behaviors at their CAC interviews rendered them credible or incredible. Further, the trial court instructed the jury that it could not consider Welke's expert testimony as an opinion regarding whether KH, WE, or MJ were telling the truth. A jury is presumed to follow its instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Under these circumstances, Welke's improper opinion did not affect the outcome of the proceedings. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Welke's testimony that it was not odd for sexually abused children to want to spend time with their abusers[2] was not, however, plainly erroneous. See *Benton*, 294 Mich App at 202. KH testified, as did members of his family, that he went back to defendant's house on a regular basis after the evening of the fish dinner, which was when he alleged that defendant touched his penis. We conclude that KH's behavior of returning to defendant's house would raise a question in the minds of the jury regarding that behavior and could potentially be perceived as inconsistent with the behavior of a sexually abused child. See *Peterson*, 450 Mich at 373 n 12. Because this testimony could be easily misconstrued and allow the jury to draw an incorrect inference, it was not plainly erroneous for Welke to testify that it was "not at all odd" for sexually abused children to willingly spend time with their abusers.[3]

## II. CUMULATIVE EFFECT OF ERROR

Defendant next argues that he was denied a fair trial by the cumulative effect of errors. We review a claim regarding the cumulative effect of errors to determine if the combination of alleged errors denied the defendant a fair trial. *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001). The cumulative effect of several errors may warrant reversal even if

---

[2] Welke explained that 95 percent of all child sexual abuse is committed by perpetrators known to the victims and, thus, an abuser is often someone for whom a victim has positive feelings.

[3] Although defendant did not specifically argue that the victims' postincident behavior was inconsistent with that of sexual abuse victims, we conclude that raising such an argument was not necessary to permit this portion of Welke's testimony at trial. In *Peterson*, 450 Mich at 358, a defendant avoided raising any questions "that would have brought into issue [the victim's] behavior that the jury would arguably consider to be inconsistent with the behavior of an abused person." Nonetheless, our Supreme Court concluded that "where there are common misperceptions regarding the behavior of the victim on which a jury may draw an incorrect inference . . .the prosecutor may present limited expert testimony dealing solely with the misperception." *Id.* at 379. Therefore, despite the fact that the defendant did not raise the issue of the particular child victim's postincident behavior or directly attack the child's credibility, the Court held that "[b]ecause the child's testimony could be easily misconstrue . . . expert testimony was proper to rebut possible inferences by the jurors." *Id.* at 379-380.

individual errors would not warrant reversal. *Id*. at 388. Only actual errors are aggregated to determine their cumulative effect. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). The errors must be of consequence. *Knapp*, 244 Mich App at 388. " '[C]umulative error,' properly understood, actually refers to cumulative unfair *prejudice*, and is properly considered in connection with issues of harmless error." *People v LeBlanc*, 465 Mich 575, 591 n 12; 640 NW2d 246 (2002).

Defendant has shown two actual errors: (1) the erroneous admission of MJ's preliminary examination testimony and (2) Welke's improper opinion that the behaviors and actions of KH, WE, and MJ at their CAC interviews were consistent with those of sexually abused children. It was defendant's theory that KH, WE, and MJ were not credible. The two errors did not significantly hinder defendant's ability to argue that the three victims were incredible. He could still argue that their postincident behavior, such as KH's conduct in returning to defendant's house two or three times a week after the fish dinner, their prior inconsistent statements at their CAC interviews and at the preliminary examination, and the inconsistencies between their testimony and the testimony of others rendered them incredible. Additionally, for reasons already provided, any prejudice that defendant suffered from Welke's improper opinion was minimal. The prejudicial impact of the erroneous admission of MJ's preliminary examination testimony may have been greater because it was a prior statement in which MJ testified that defendant touched his penis, which could have bolstered MJ's credibility. Regardless, the jury heard another prior statement of MJ through the testimony of MJ's mother. Moreover, KH, WE, and MJ each testified that defendant touched their penises and WE testified regarding other acts of sexual misconduct by defendant, and their testimony could be used to show defendant's propensity and character to commit the charged crimes. MCL 768.27a; *Watkins*, 491 Mich at 491-492. Under these circumstances, the combined prejudicial effect of the two errors was not so consequential as to affect the jury's credibility determinations and deny defendant a fair trial. We reject defendant's claim regarding the cumulative effect of the errors.

## III. DEFENDANT'S STANDARD 4 BRIEF

In his Standard 4 brief, defendant argues that he was denied numerous constitutional rights when the trial court prohibited him from introducing evidence showing a direct contradiction of KH's allegations and evidence that would place considerable doubt on WE's allegations. Because defense counsel never attempted to introduce any of the evidence that defendant claims the trial court prohibited him from introducing, we view defendant's arguments as claims of ineffective assistance of counsel. To establish a claim of ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008). Because defendant did not move for a new trial or an evidentiary hearing below, our review is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

A defendant has the burden of establishing the factual predicate for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The factual predicate of defendant's first claim is that an October 2013 case report and an April 2014 letter reported that KH denied that any touching occurred. However, our review is limited to errors

apparent on the record. *Heft*, 299 Mich App at 80. Neither the case report nor the letter referenced by defendant is included in the lower court record. Accordingly, defendant has not established the factual predicate for his claim. Additionally, defendant does not cite any authority in support of his argument, so it is unclear whether he is claiming that the October 2013 case report and the April 2014 letter should have been submitted for the truth of KH's denials or only as extrinsic evidence of prior inconsistent statements to test the credibility of KH's testimony. See *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995); *People v Steele*, 283 Mich App 472, 487; 769 NW2d 256 (2009). Because "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority," *Kelly*, 231 Mich App at 640-641, defendant has abandoned this ineffective assistance claim.

Next, to establish a claim of ineffective assistance of counsel, a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). Decisions regarding what evidence to present are presumed to be matters of trial strategy. *Id*. at 398. According to defendant, he suffered from numerous physical problems, including, most pertinently, erectile dysfunction, and evidence of this physical problem would have cast doubt on WE's allegation of penetration. The prosecution filed a motion for release of defendant's medical records, which indicated that defendant had been given a prescription for erectile dysfunction. As a result of the motion, the trial court ordered that all of defendant's medical records from the Battle Creek Veteran's Hospital, including records of any prescriptions that were filled, be released to the prosecution and that any medical providers who were subpoenaed shall testify regarding defendant's medical records. It is unknown what testimony a medical provider would give regarding defendant's erectile dysfunction and filled prescriptions that may have remedied that ailment. Under these circumstances, defendant has failed to overcome the strong presumption that defense counsel's decision not to present evidence of defendant's physical problems was anything other than sound trial strategy. See *id*. at 396. Defendant was not denied the effective assistance of counsel.[4]

Affirmed.

/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola

---

[4] We reject defendant's argument that the cumulative effect of the errors identified in his Standard 4 brief denied him a fair trial. Absent the establishment of deficiencies in counsel's performance, there can be no cumulative effect of deficiencies meriting reversal. See *Dobek*, 274 Mich App at 106.