PEOPLE v JONES

Docket No. 258571. Submitted January 5, 2006, at Grand Rapids. Decided March 7, 2006, at 9:10 a.m. Leave to appeal sought.

Kyle M. Jones was convicted by a jury in the Kalamazoo Circuit Court of assault with intent to commit murder and possession of a firearm during the commission of a felony. After the only eyewitness had refused to testify because of threats, the court, Philip D. Schaefer, J., had admitted evidence of the witness's earlier statement to the police under MRE 804(b)(6). The defendant appealed.

The Court of Appeals *held*:

The trial court did not abuse its discretion by admitting the statement. MRE 804(b)(6) provides an exception to the hearsay rule for a statement by a declarant made unavailable by a party engaging in or encouraging wrongdoing intended to procure the declarant's unavailability. The Confrontation Clause of the Sixth Amendment does not render testimonial hearsay evidence inadmissible because of the witness's unavailability and the lack of a prior opportunity for cross-examination if the defendant is responsible for procuring the witness's unavailability. If the hearsay testimony is properly admitted under the exception, the defendant's constitutional right to confrontation is waived. The preponderance of the evidence standard generally applicable to preliminary questions of admissibility applies to a court's consideration of admissibility under MRE 804(b)(6). To admit a statement against a defendant under the rule, the prosecution must show (1) that the defendant engaged in or encouraged wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing procured the unavailability. The rule's purpose is to respond to the problem of witness intimidation. In this case, there was ample evidence of threats to prevent the witness from testifying. Despite the lack of direct evidence that the defendant threatened the witness, the trial court could infer from the evidence that the defendant engaged in or encouraged wrongdoing and had a role in the intimidation given the history of witness intimidation by those making the threats, their personal relationships with each other and the defendant, and their affiliation with the gang involved.

Affirmed.

CRIMINAL LAW — EVIDENCE — HEARSAY — UNAVAILABLE DECLARANTS — INTIMIDA-
TION OF WITNESSES — CONFRONTATION CLAUSE.

> A statement by a declarant who is made unavailable by a defendant
> is admissible as evidence against the defendant under a hearsay
> exception if the court determines by a preponderance of the
> evidence (1) that the defendant engaged in or encouraged wrong-
> doing, (2) that the wrongdoing was intended to procure the
> declarant's unavailability, and (3) that the wrongdoing procured
> the unavailability; applying pressure on a potential witness not to
> testify, including threats of harm and suggestions of future retri-
> bution, is wrongdoing; hearsay testimony properly admitted under
> the exception does not violate a defendant's constitutional right to
> confront the witnesses against him or her (US Const, Am VI; MRE
> 804[b][6]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*,
Solicitor General, *Jeffrey R. Fink*, Prosecuting Attor-
ney, and *Heather S. Bergmann*, Assistant Prosecuting
Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*) for the
defendant.

Before: ZAHRA, P.J., and MURPHY and NEFF, JJ.

NEFF, J. Defendant appeals as of right his jury trial
convictions of assault with intent to commit murder,
MCL 750.83, and possession of a firearm during the
commission of a felony (felony-firearm), MCL 750.227b.
Defendant was sentenced to 15 to 30 years' imprison-
ment for the conviction of assault with intent to commit
murder, and to a consecutive two-year term for the
felony-firearm conviction. We affirm.

I

This case resulted from the October 29, 2003, shoot-
ing of Vertdell Burnette on Kalamazoo's east side.

Defendant was identified as the shooter, although testimony concerning the shooting varied widely and key witnesses were reluctant to testify or provide details of the shooting.

The shooting apparently was related to an ongoing dispute between certain residents of Kalamazoo's north and east sides. According to Burnette, who lived on Kalamazoo's north side, he went to the east side with his friend Chris on the afternoon of October 29. As they walked on the sidewalk, the two were approached from behind by a group of male teenagers, one of whom was wearing brass knuckles. When Burnette turned around, he was hit in the chin, and someone in the group told the two to get off the east side. As Burnette was running to a parked car, he was shot in the back of his left leg and lower back.

Burnette could not identify the shooter. Although numerous witnesses testified at trial, the only eyewitness was a friend of defendant's, Kendrick Troup, who refused to testify about defendant's involvement in the shooting, stating that he did not want to incriminate defendant and their mutual friends. In a separate hearing concerning his refusal to testify, however, Troup admitted that he feared retribution if he testified, particularly because certain individuals were present in the courtroom. After the hearing, and consulting with counsel, Troup did not resume his testimony. The trial court subsequently ruled that Troup's partial direct examination would be stricken from the record and that his earlier statement to the police would be admitted as evidence under MRE 804(b)(6).

II

Defendant argues that he was denied his Sixth Amendment right of confrontation because the trial

court admitted into evidence the prior testimonial statement of eyewitness Troup, who was the prosecution's primary witness against defendant. Defendant contends that the admission of Troup's statement to Officers Hicok and Kloosterman was error because the prosecution did not prove that defendant forfeited his Confrontation Clause rights by procuring the unavailability of Troup as a witness under MRE 804(b)(6). Further, the error was not harmless and, therefore, requires reversal of his conviction. We disagree.

A

The decision to admit or exclude evidence is reviewed for a clear abuse of discretion. *People v Bauder,* 269 Mich App 174, 179; 712 NW2d 506 (2005). Preliminary questions of law, such as whether a rule of evidence, constitutional provision, or statute precludes the admission of the evidence, are reviewed de novo. *People v Katt,* 468 Mich 272, 278; 662 NW2d 12 (2003).

An abuse of discretion exists only if an unprejudiced person, considering the facts on which the trial court acted, would say that there is no justification or excuse for the trial court's decision. *Bauder, supra* at 179. "A trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id.* However, an abuse of discretion occurs when a trial court admits evidence that is inadmissible as a matter of law. *Katt, supra* at 278.

Errors alleging constitutional violations may require heightened review:

> When constitutional error occurs and is preserved, as defendant here alleges the admission of hearsay in violation of the right of confrontation to be such an error, a new trial must be ordered unless it is clear beyond a reasonable doubt that a rational jury would have found the defendant

guilty absent the error. On the other hand, ordinary trial error, even if preserved, will merit reversal only when, in the context of the entire trial, it affirmatively appears more probable than not that the error was outcome determinative. [*Bauder, supra* at 179-180. (citations omitted.)]

B

MRE 804(b)(6) provides an exception to the hearsay rule for a statement by a declarant made unavailable by the opponent. If the declarant is unavailable as a witness, the rule allows admission of "[a] statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." MRE 804(b)(6). MRE 804(b)(6), adopted in 2001, is nearly identical to FRE 804(b)(6),[1] except that the Michigan exception applies if a party "has engaged in or *encouraged* wrongdoing" rather than "engaged or *acquiesced* in wrongdoing" (emphasis added). These rules are a codification of the common-law equitable doctrine of forfeiture by wrongdoing, first recognized in *Reynolds v United States*, 98 US 145; 25 L Ed 244 (1879). *Bauder, supra* at 182-183. Under the doctrine, a defendant forfeits his or her constitutional right of confrontation if a witness's absence results from wrongdoing procured by the defendant:

The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by [the accused's] own

---

[1] "FRE 804(b)(6) provides that '[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness' is not subject to exclusion under the hearsay rule if the declarant is unavailable as a witness." *Bauder, supra* at 183 n 3. The federal rule was adopted in 1997. *Id.* at 183-184.

> wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. . . .
>
> [T]he rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong . . . . [*Reynolds, supra* at 158-159; see *Bauder, supra* at 183.]

Although the Michigan and federal rules codify the rule of forfeiture by wrongdoing, the equitable doctrine "is not dependent on them for its application because the Sixth Amendment's protections are not dependent on 'the vagaries of the rules of evidence.' " *Bauder, supra* at 184. quoting *Crawford v Washington*, 541 US 36, 61; 124 S Ct 1354; 158 L Ed 2d 177 (2004), and citing *United States v Garcia-Meza*, 403 F3d 364, 370 (CA 6, 2005).

1

In support of his arguments on appeal, defendant contends that he had a constitutional right to confront the prosecution's primary witness against him, citing *Crawford*. It is not clear whether defendant is asserting a right of confrontation independent of and despite the proper admission of hearsay evidence under MRE 804(b)(6). To the extent that defendant argues that *Crawford* requires an opportunity for cross-examination even if the defendant has by wrongdoing procured the absence of a witness, we disagree.

In *Crawford*, the Supreme Court

> held that the Confrontation Clause does not permit the admission in evidence of ex parte "testimonial" statements, which the Court did not precisely define, unless the accused has had a prior opportunity for cross-examination and the declarant is unavailable. "Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior op-

portunity for cross-examination." [*Bauder, supra* at 180-181, quoting *Crawford, supra* at 68.]

In our view, in deciding *Crawford*, the United States Supreme Court did not intend to deem testimonial hearsay evidence, such as that in the present case, inadmissible on the basis of a witness's unavailability and the lack of a prior opportunity for cross-examination if the defendant is responsible for procuring the witness's unavailability. In *Crawford*, the Court overruled its earlier decision in *Ohio v Roberts*, 448 US 56, 66; 100 S Ct 2521; 65 L Ed 2d 597 (1980), which held that a hearsay statement against a criminal defendant was admissible if the witness was unavailable and the statement bore adequate "indicia of reliability" by either falling within a "firmly rooted hearsay exception," or because it possessed "particularized guarantees of trustworthiness." In discussing the Confrontation Clause and *Roberts*, Justice Scalia stated:

> The *Roberts* test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability. It thus replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one. In this respect, it is very different from exceptions to the Confrontation Clause that make no claim to be a surrogate means of assessing reliability. For example, the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability. See *Reynolds[supra* at 158-159]. [*Crawford, supra* at 62.]

These statements indicate that the reasoning in *Crawford* does not apply to the circumstances at issue in this case. "If . . . the witness is only unavailable to testify because the defendant has killed or intimidated her, then the defendant has forfeited his right to confront that witness." *United States v Cromer*, 389 F3d 662, 679

(CA 6, 2004). Defendant's constitutional right to confrontation is waived under the doctrine of forfeiture by wrongdoing if hearsay testimony is properly admitted because the declarant's unavailability was procured by defendant's wrongdoing.

2

Defendant argues that Michigan should adopt a clear and convincing evidence standard, rather than a preponderance of the evidence standard, in considering the admission of evidence under MRE 804(b)(6). We find no basis for applying the stricter clear and convincing evidence standard.

The notes of the advisory committee on the 1997 amendments of the Federal Rules of Evidence indicate that "[e]very circuit that has resolved the question has recognized the principle of forfeiture by misconduct, although the tests for determining whether there is a forfeiture have varied." The notes indicate that the Second, Sixth, Eighth, and Tenth circuits all apply the preponderance of the evidence standard, while the Fifth Circuit applies the clear and convincing evidence standard. The notes further state, "The usual Rule 104(a) preponderance of the evidence standard has been adopted in light of the behavior the new Rule 804(b)(6) seeks to discourage."

In *Steele v Taylor*, 684 F2d 1193, 1202-1203 (CA 6, 1982), the Sixth Circuit Court of Appeals stated:

Our Court has developed such a preponderance standard for trial judges in making preliminary findings of fact on the admissibility of extra-judicial statements under the co-conspirator exception. Since the question of admissibility of such statements under the co-conspirator exception is equivalent to a ruling on their admissibility under the confrontation clause, we see no logical reason to impose a

higher standard on the states in making preliminary find-
ings on procurement in connection with rulings on the
admissibility of similar extra-judicial statements. [Cita-
tions omitted.]

Our Supreme Court addressed the trial court's role
in determining the admissibility of evidence in *People v
Vega*, 413 Mich 773, 778-780; 321 NW2d 675 (1982).
The Court noted that MRE 104, which is identical to
FRE 104, provides that the trial judge is to determine
the conditions for the admissibility of evidence, includ-
ing preliminary questions of admissibility, and held that
the trial judge should use the preponderance of the
evidence standard to determine whether the underlying
conspiracy was proven before admitting statements of
coconspirators under MRE 801(d)(2)(E). The Court
noted that although Michigan had traditionally used a
"prima facie" evidentiary standard to determine admis-
sibility under the coconspirator exception, a higher
standard, preponderance of the evidence, was evolving
under FRE 104. *Vega, supra* at 782. We find no basis for
deviating from the preponderance of the evidence stan-
dard generally applicable to preliminary questions of
admissibility.

Defendant cites *People v Geraci*, 85 NY2d 359, 367;
625 NYS2d 469; 649 NE2d 817 (1995), in which the
New York Court of Appeals adopted the clear and
convincing evidence standard for the admission of such
hearsay evidence in grand jury proceedings because it is
the "more exacting standard, which is the one most
protective of the truth-seeking process," and reasoned
that this standard "best recognizes the gravity of the
interest at stake and most effectively balances the need
to reduce the risk of error against the practical difficul-
ties of proving witness tampering." However, we find
the reasoning in *Geraci* unconvincing in light of over-

whelming support for the use of the preponderance of the evidence standard in both state and federal courts.

We are also unpersuaded by defendant's argument that Michigan's rejection of the less stringent federal rule, that one merely "acquiesce" in the wrongdoing of another, is support for the similar adoption of the stricter clear and convincing evidence standard. To the contrary, by adopting a stricter requirement within the rule itself, Michigan has addressed any desired distinction from the federal rule, and any further obstacle to its application would defeat the intended balancing of the interests at stake.

3

Defendant argues that even if the preponderance of the evidence standard applies, the prosecution failed to establish that defendant engaged in or encouraged wrongdoing intended to procure Troup's unavailability as a witness. We find no error requiring reversal.

As noted, Troup was an eyewitness who identified defendant as the person who shot Burnette. Troup's statement was made to officers Hicok and Kloosterman, in Kloosterman's office at Kalamazoo Central High School.

Although, as noted above, MRE 804(b)(6) differs slightly in language from the federal rule, the general approach to determining admissibility under either rule would be the same. Accordingly, "[t]o admit a statement against a defendant under the rule, . . . the government must show (1) that the defendant engaged [in or encouraged] wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability." *United States v Scott,* 284 F3d 758, 762 (CA 7, 2002).

In the present case, there appears to be no disagreement that Troup refused to testify about defendant's role in the shooting because of threats and fear of retribution.[2] However, because there was no evidence that defendant himself directly threatened Troup, the key dispute is whether the evidence of indirect threats established that defendant "engaged in or encouraged wrongdoing." MRE 804(b)(6). Given Troup's initial testimony in court, subsequent statements by Troup and Officer Johnson during a separate hearing concerning Troup's refusal to testify, and other evidence before the court, we find no error in the court's determination that defendant engaged in or encouraged wrongdoing. There was ample evidence of the threats to Troup to prevent him from testifying against defendant and of the practice of witness intimidation by persons affiliated with the East Side 100 gang, who were the source of Troup's intimidation.

In the courtroom, Troup declined to testify further after initially providing details of the events surrounding the shooting. However, in a separate hearing in chambers to determine appropriate courtroom procedures to secure Troup's testimony, the court heard statements under oath from Troup and Officer Johnson, who had investigated the threats against Troup. Troup testified that he had received word that Shawn Lockett, defendant's cousin, would kill him if

---

[2] Troup was called as a witness and testified about the events preceding the shooting, including that he knew Burnette, the victim, and that he and defendant were friends. He provided details of the confrontation and events surrounding the shooting. He identified who hit Burnette with the brass knuckles, but became nonresponsive when the questioning began to focus on defendant. Troup's responses were inaudible, and he covered his mouth with his hand as he replied to questions. The court questioned Troup about his refusal to testify, and Troup stated that the reason he did not want to testify in court was that he was getting death threats.

Lockett saw him testifying in court, which was one of at least three death threats Troup received. He was also afraid that two female relatives of Lockett, who were cousins of defendant and were in the courtroom, would relay Troup's testimony to Lockett. Troup stated that the girls and Lockett were members of the East Side 100 gang. He also acknowledged that defendant was a member of the gang, which added to his reluctance to testify. After leaving the hearing with his mother to consult with counsel provided through the court, Troup refused to testify further.

The court then heard testimony from Officer Johnson, who testified that sometime in the preceding weekend, Troup's mother called him and reported that a person named Philip, who was a member of the East Side 100 gang, came to her home and indicated that "they" had received a letter from defendant telling them to come and fight Troup to stop him from testifying. Officer Johnson stated that on the morning of the hearing, Troup identified the visitor as Philip Johnson in a photo lineup; however, Troup was afraid that if Officer Johnson took any action concerning Philip's threat, it would only exacerbate Troup's problems with the East Side 100 gang. Officer Johnson testified that another witness, Michael Lasenby, also received threats from individuals associated with the East Side 100 gang about his testimony, and that the East Side 100 gang has a history of involvement with other violent crime investigations, including shootings between the feuding north side and east side groups. Defense counsel acknowledged that Lockett had been charged with intimidating a witness in another trial reportedly involving a defendant who was one of the leaders of the East Side 100 gang, although he was not bound over on the charges.

Defendant takes issue with the fact that the court relied on testimony from Officer Johnson concerning Phillip Johnson's threat and the alleged letter from defendant, rather than on direct testimony from Troup or his mother. However, under the circumstances of this case, we do not find that the lack of direct evidence precludes a finding of defendant's wrongdoing,[3] particularly in light of the evidentiary rule's purpose.

"Rule 804(b)(6) . . . is an attempt to respond to the problem of witness intimidation whereby the criminal defendant, his associates, or friends through one means or another, often a simple telephone call, procures the unavailability of the witness at trial and thereby benefits from the wrongdoing by depriving the trier of fact of relevant testimony of a potential witness." Anno: *Construction and application of Fed Rules Evid Rule 804(b)(6), 28 USCA, hearsay exception based on unavailable witness' wrongfully procured absence*, 193 ALR Fed 703; see also *Scott, supra* at 763-764, quoting 30B Graham, Federal Practice & Procedure (2000 interim ed) § 7078, p 702 (" 'Rule 804(b)(6) is an attempt to respond to the problem of witness intimidation whereby the criminal defendant . . . through one means or another, often a simple telephone call, procures the unavailability of the witness at trial . . . .' ").

To the extent that the court's finding rested on Officer Johnson's credibility, it was a matter for the trial court to decide. The court expressly stated that it

---

[3] Under MRE 1101(b)(1), the rules of evidence do not apply to "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104(a)." MRE 104(a) provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court," and, in ruling on preliminary questions of admissibility, the trial court is "not bound by the Rules of Evidence, except those with respect to privileges."

found the testimony of Troup and Officer Johnson credible with respect to the threats to prevent Troup from testifying. Moreover, the trial court could infer from the evidence before it that defendant had a role in intimidating or issuing the death threat to silence Troup, given the history of witness intimidation by those involved, their personal relationships, and their affiliation with the East Side 100 gang.

Rule 804(b)(6) "contemplates application against the use of coercion, undue influence, or pressure to silence testimony and impede the truth-finding function of trials." *Scott, supra* at 764. "[A]pplying pressure on a potential witness not to testify, including by threats of harm and suggestion of future retribution, is wrongdoing." *Id.* This case, although a close call, is essentially a "battle of inferences," *id.*, and we cannot conclude that the court erred in inferring that defendant was involved in intimidating Troup to prevent him from testifying. We find no abuse of discretion in the admission of Troup's statement under MRE 804(b)(6).[4]

Affirmed.

---

[4] Because Troup's statement was admissible under MRE 804(b)(6), we do not address defendant's argument that Troup's statement would have been inadmissible under MRE 804(b)(7).