# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAJUAN ROBINSON,

Defendant-Appellant.

UNPUBLISHED
January 16, 2018

No.  334812
Wayne Circuit Court
LC No.  16-000270-01-FC

Before:  TALBOT, C.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant, DaJuan Robinson, was convicted by a jury of assault with intent to do great bodily harm,[1] being a felon in possession of a firearm,[2] and possession of a firearm during the commission of a felony.[3]  He appeals by right.  We affirm.

## I.  BACKGROUND

On June 13, 2015, Ben Johnson was shot in the stomach while socializing with several people outside of a friend's home in the city of Detroit.  Johnson later identified Robinson as the shooter and selected his picture from a photo array provided by the police.  However, after Robinson was charged in connection with the shooting, Johnson proved unwilling to testify and the case was dismissed without prejudice.  Thereafter, Johnson was taken into custody on a witness detainer to testify in a grand jury investigation.  As a result of the grand jury proceedings, Robinson was recharged in the instant matter.

While in jail awaiting trial, Robinson and his girlfriend, Sharina Hinson, had a series of phone conversations that were recorded by the Department of Corrections.  Contemporaneous with their conversations, Hinson sent several text messages to Johnson.  In these messages, Hinson offered Johnson "his"—presumably referring to Robinson—apology and a "gift" in the

---

[1] MCL 750.84.

[2] MCL 750.224f.

[3] MCL 750.227b.

form of a Cadillac. She asked Johnson to "work with her," stated she wanted to make sure "we don't have to deal with this no more," and encouraged Johnson to say he was too drunk and could not remember who shot him. Hinson also confronted Johnson with copies of his written statement and other documents and reported to Robinson that she showed the documents to others in their community. In an April 2016 text message, Hinson taunted Johnson, saying, "EVERYBODY talkin bout it," and then distributed a photograph of Johnson captioned with the words "WHEN A SNITCH IS WONDERING WHO KNOWS HE SNITCHED." During the recorded phone calls between Hinson and Robinson, the two seemingly discussed Hinson's contacts with Johnson. Although both Hinson and Robinson spoke in coded language (using female pronouns and referring to Johnson as "old girl"), the context and timing of their conversations leave little doubt that their discussions concerned Johnson.

The trial court granted the prosecution's pretrial motion to admit Hinson's messages to Johnson and the phone call recordings, reasoning that they were admissible under MRE 801(d)(2)(E) as the statements of a coconspirator. The court also found that Robinson had engaged in wrongdoing intended to procure Johnson's unavailability as a witness and had therefore forfeited his right to have Johnson's prior statements excluded on the basis of hearsay or the constitutional right of confrontation. Accordingly, the court likewise granted the prosecution's motion to admit Johnson's grand jury testimony in the event he was absent from trial or lacked memory concerning the subject matter. The prosecution's investigator was unable to locate Johnson for trial and his earlier testimony was read into the record. Consistent with the court's pretrial rulings, transcripts of Robinson's phone conversations with Hinson and Hinson's text messages to Johnson were also presented to the jury.

## II. JOHNSON'S GRAND JURY TESTIMONY

On appeal, Robinson first argues that the trial court erred by finding that Johnson was unavailable and admitting his grand jury testimony in violation of Robinson's constitutional right to confront witnesses. We disagree.

A trial court's evidentiary rulings are generally reviewed for an abuse of discretion.[4] An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes.[5] Whether the admission of a witness's prior statement violates a defendant's Sixth Amendment right of confrontation is a question of law that we review de novo.[6] The trial court's factual findings are reviewed for clear error.[7] "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made."[8]

---

[4] *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

[5] *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

[6] *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011).

[7] *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009).

[8] *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016).

Both the federal and state Constitutions guarantee a criminal defendant the right to be confronted with the witnesses against him.[9] As such, the testimonial statements of a witness who does not appear at trial are generally inadmissible "unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness."[10] "A witness is considered unavailable if he or she is 'absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown.' "[11]

However, a defendant can forfeit his right to exclude a witness's prior statements by his own wrongdoing.[12] Commonly known as the forfeiture-by-wrongdoing rule, "MRE 804(b)(6) provides that a statement is *not* excluded by the general rule against hearsay if the declarant is unavailable, and the 'statement [is] offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.' "[13] The forfeiture-by-wrongdoing rule is designed to "respond to the problem of witness intimidation whereby the criminal defendant, his associates, or friends . . . procures the unavailability of the witness at trial and thereby benefits from the wrongdoing by depriving the trier of fact of relevant testimony of a potential witness."[14] Importantly, while MRE 804(b)(6) is an evidentiary rule establishing an exception to the general inadmissibility of hearsay, it derives from the common-law forfeiture doctrine, which also serves as an exception to a defendant's constitutional right of confrontation.[15]

"To admit evidence under MRE 804(b)(6), the prosecution must show by a preponderance of the evidence that: (1) the defendant engaged in or encouraged wrongdoing; (2) the wrongdoing was intended to procure the declarant's unavailability; and (3) the wrongdoing did procure the unavailability."[16] Based on the recorded calls between Robinson and Hinson, as well as the evidence obtained from Hinson's cellphone, the trial court found that Robinson directed and encouraged Hinson's attempts to bribe and intimidate Johnson with the specific intent of precluding Johnson's testimony at trial. These findings were not clearly erroneous. Although Hinson was the only person to communicate with Johnson directly, the recorded phone calls clearly demonstrated that Robinson consistently discussed and encouraged Hinson's efforts

---

[9] *People v Yost*, 278 Mich App 341, 369-370; 749 NW2d 753 (2008), citing US Const, Am VI, and Const 1963, art 1, § 20.

[10] *Yost*, 278 Mich App at 370.

[11] *Id*., quoting MRE 804(a)(5).

[12] *Burns*, 494 Mich at 110.

[13] *Id*., quoting MRE 804(b)(6) (alteration in original).

[14] *People v Jones*, 270 Mich App 208, 220; 714 NW2d 362 (2006) (quotation marks and citation omitted).

[15] *Burns*, 494 Mich at 111.

[16] *Id*. at 115.

either shortly before or after she contacted Johnson each time. For instance, on July 15, 2015, Hinson sent messages to Johnson offering to give him a Cadillac. When Hinson spoke with Robinson later that day, they discussed the offer and Robinson expressed frustration about Johnson's failure to respond. In August 2015, just before Hinson confronted Johnson by text message with his written statement and a police report, Robinson asked Hinson if "everything that I sent you was clear," and reminded her to say that it came from Robinson's lawyer. Later, as Robinson's trial date approached, he encouraged Hinson to "continue doing what you been doing" and instructed Hinson to "try to call her[17] tomorrow morning . . . ." Given the level of coordination between Hinson and Robinson and the fact that Hinson's efforts occurred after Robinson had been criminally charged,[18] we are not left with a definite and firm conviction that the trial court erred by finding that Robinson engaged in wrongdoing that was designed to cause Johnson to either be absent from trial or not testify truthfully.

With respect to the third requirement for admission of evidence under MRE 804(b)(6)—that the wrongdoing procured the absent witness's unavailability—Robinson argues that Johnson did not appear because he simply did not like going to court. When Johnson failed to appear at trial, the court and parties focused on the prosecution's attempts to procure his presence to determine whether he was "unavailable," but failed to address whether Robinson's wrongdoing caused Johnson's absence.[19] Despite the court's failure to address this requirement, it did not abuse its discretion by admitting Robinson's grand jury testimony because a preponderance of the evidence supports the conclusion that Robinson's wrongdoing caused Johnson's absence. Data from Hinson's phone showed that Johnson did not respond to Hinson often, but when he did, he denied Hinson's accusations and repeatedly asked her to stop contacting him. Johnson voluntarily spoke with the prosecution's office in April 2016 and disclosed Hinson's messages. Although he was apparently willing to cooperate at that time, Hinson continued to confront Johnson by text message and by the time the prosecution began to look for Johnson in anticipation of the June 2016 trial date, he could not be located. Additionally, Johnson's stepfather reported that Johnson did not intend to appear for trial and opined that he was afraid. On this record, we conclude that the trial court did not abuse its discretion by admitting Johnson's grand jury testimony on the basis of the forfeiture-by-wrongdoing rule.

---

[17] As noted earlier, although Hinson and Robinson regularly used female pronouns in their discussions, the context of the conversations clearly referred to Hinson's contacts with Johnson.

[18] See *id*. at 116 ("While the timing of the wrongdoing is by itself not determinative, it can inform the inquiry: a defendant's wrongdoing *after* the underlying criminal activity has been reported or discovered is inherently more suspect, and can give rise to a strong inference of intent to cause a declarant's unavailability.").

[19] The trial court granted the prosecution's pretrial motion to admit Johnson's grand jury testimony in the event Johnson was "either absent from trial or has a lack of memory regarding the subject matter," and thus did not address the third requirement of MRE 804(b)(6) at the time of its first ruling.

### III. HINSON'S STATEMENTS

Next, Robinson argues that the trial court erred when it allowed the prosecution to present the recordings of his conversations with Hinson and Hinson's text messages to Johnson as statements of a coconspirator. We disagree.

"We review for an abuse of discretion a trial court's ruling on the admissibility of evidence."[20] An abuse of discretion occurs when the trial court's decisions falls outside the range of reasonable and principled outcomes.[21] When an evidentiary issue involves a preliminary question of law, this Court reviews the question de novo.[22]

Hearsay is generally inadmissible as evidence.[23] "However, a statement is not hearsay if the statement is offered against a party and is 'a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy.' "[24] Robinson argues on appeal that his conversations with Hinson did not demonstrate that he actively participated in a conspiracy to bribe Johnson or interfere with Johnson's testimony. Rather, according to Robinson, he merely listened to Hinson's "erratic banter." Robinson further maintains that, due to his incarceration and indigence, he could not have participated in any such scheme or known with certainty what Hinson was doing. Robinson's arguments in this regard are unpersuasive.

While it is true that Robinson's conversations with Hinson were often one-sided, several of his limited comments belie his insistence that he did not participate in a conspiracy to interfere with Johnson's testimony. Even if Robinson could not personally reach out to Johnson from jail, the recordings showed that he was fully aware of Hinson's attempts to bribe and intimidate Johnson and he explicitly told her to "continue doing what you been doing." As already noted, he also provided Hinson with various documents to use in confronting Johnson, advised her to make it clear that the documents came from his lawyer, and instructed her to try to call Johnson as the trial date approached. These comments and actions reflect more than passive awareness and demonstrate that Robinson encouraged and occasionally directed Hinson's actions. Accordingly, the trial court did not err by finding that Robinson and Hinson were engaged in a conspiracy to commit witness tampering.

Robinson also argues that Hinson's text messages to Johnson did not constitute statements made in furtherance of a conspiracy. We disagree. A conspiracy continues "until the

---

[20] *People v Bowman*, 254 Mich App 142, 145; 656 NW2d 835 (2003).

[21] *Babcock*, 469 Mich at 269.

[22] *Burns*, 494 Mich at 110.

[23] MRE 802.

[24] *People v Martin*, 271 Mich App 280, 316; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008), quoting MRE 801(d)(2)(E).

common enterprise has been fully completed, abandoned, or terminated."[25]  Additionally, "[t]he requirement that the statement further the conspiracy has been construed broadly," and "[a]lthough idle chatter will not satisfy this requirement, statements that prompt the listener . . . to respond in a way that promotes or facilitates the accomplishment of the illegal objective will suffice."[26]  MCL 750.122(1) provides that "[a] person shall not give, offer to give, or promise anything of value to an individual" for the purpose of discouraging that individual from testifying or influencing the individual's testimony.  Subsection (3) similarly prohibits a person from discouraging or attempting to influence an individual's testimony by way of threats or intimidation.[27]  It is evident that Hinson's text messages to Johnson were made in furtherance of the conspiracy to commit witness tampering because she first stated that she felt bad about the situation and offered him a Cadillac as a "gift" without further explanation.  When the bribe proved unsuccessful, she confronted him with his written statement and, after sharing it with others, attempted to pressure him by labeling him as a snitch.  If there was any confusion about Hinson's motive, it was clarified by the following message: "I'm trying to do everything I can to mke [sic] sure none of us hve [sic] to deal with this no more, but I need ur help."  Because Hinson's statements to Johnson were made in an effort to accomplish her illegal objective—i.e., discouraging or influencing his testimony against Robinson—they constitute statements made in furtherance of the conspiracy.

## IV.  JURY INSTRUCTIONS

Lastly, Robinson argues that the trial court erred by providing the following instruction to the jury concerning false exculpatory statements:

> Evidence has been introduced . . . that the defendant may have made a . . . false exculpatory statement about his involvement in this case.  Evidence that a criminal defendant has lied about his involvement in this case may be considered by you as circumstantial evidence of guilt.  In deciding what, if any weight to give the evidence, you must be guided by the following circumstances:  You must decide whether the defendant did, in fact, make any statement.  If you decide that the defendant did make such a statement, you should determine whether the statement was, in fact, false.  If you decide that the defendant did make a statement about his involvement in this case, you should consider all the circumstances surrounding the making of that statement in deciding what, if any, weight you should attach to it.  And if you decide that the defendant made a false statement, you may also use this evidence as consciousness of guilt.

In support of his claim of error, Robinson argues that the evidence to which the instruction referred—testimony indicating that he denied involvement in the shooting—was not a false exculpatory statement because he did not try to lead the police in a false direction.  Robinson

---

[25] *Martin*, 271 Mich App at 317 (quotation marks and citation omitted).

[26] *Id*.

[27] MCL 750.122(3).

contends that the instruction was improper because it essentially told the jury his claim of innocence was false, thereby usurping its role as fact-finder. We disagree.

"We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion."[28] When considering a claim of instructional error, we consider the instructions in their entirety, and "there is no error requiring reversal if the instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury."[29] In addition to the elements of the charged offenses, jury instructions must include any material issues or theories that are supported by the evidence.[30]

The trial court did not abuse its discretion by determining that the false exculpatory statement instruction was warranted based on the evidence presented at trial. Agent Matthew Walker testified that he interviewed Robinson concerning the shooting. Robinson denied leaving his house on the night of the shooting, owning a gun, or shooting Johnson. He also asserted that he last saw Johnson about "a month ago." However, Johnson testified that on the night of the shooting, he was socializing in the street with several friends, including three women he had been with earlier in the day. He explained that the shooting was preceded by an altercation between Robinson and one of Johnson's female companions named Kiarra. While at the hospital receiving treatment for the gunshot wound, Johnson identified Robinson as the shooter and noted that he was wearing red. Johnson and another eyewitness were both able to select Robinson's picture from a photo array, and yet another witness recalled a man with red clothing trying to dance with Kiarra before the shooting. Additionally, Robinson's cellphone records suggested that minutes after the shooting, his phone was used in locations other than his home. The totality of this evidence leads to the conclusion that, at minimum, Robinson lied when he said he was at home all night and it can be inferred that his false statement was designed to avoid being implicated as the person who shot Johnson. Thus, the trial court did not abuse its discretion by instructing the jury regarding false exculpatory statements.

Furthermore, we do not agree that the trial court's instruction invaded the province of the jury. To the contrary, the court specifically instructed the jury that it must decide all the facts relevant to this issue—i.e., whether Robinson made a statement, whether the statement was false, and, ultimately, whether the false statement proved consciousness of guilt. Michigan jurisprudence has a long history of recognizing that exculpatory statements which are later proved to be false are admissible as circumstantial evidence of guilt.[31] Robinson's exculpatory statements were introduced at trial, as was evidence tending to prove that at least some of his

---

[28] *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017) (quotation marks and citation omitted).

[29] *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

[30] *Id*.

[31] *People v Seals*, 285 Mich App 1, 5-6; 776 NW2d 314 (2009), citing *People v Arnold*, 43 Mich 303; 5 NW 385 (1880), and *People v Wackerle*, 156 Mich App 717; 402 NW2d 81 (1987).

statements were false.  The trial court's jury instruction fairly presented the manner in which the jury should consider that testimony and, thus, sufficiently protected Robinson's rights.

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien