*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TONY JUNIOR HARRIS,

Defendant-Appellant.

UNPUBLISHED
December 17, 2019

No. 343233
Wayne Circuit Court
LC No. 17-009752-01-FH

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Tony Harris, appeals as of right his jury trial convictions of intimidating a witness, MCL 750.122, and obstruction of justice, MCL 750.505. For the reasons stated in this opinion, we vacate his convictions.

## I. BASIC FACTS

In September 2017, Harris was arrested and charged with felonious assault, felon in possession of a firearm, and possession of a firearm during the commission of a felony. The basis for the charges was an allegation by Safar Mann that, while Safar was working at a liquor store, Harris pointed a gun at him. Harris was arraigned on the charges, and the court entered a no-contact order prohibiting Harris from directly or indirectly contacting Safar.

Harris, however, made "probably, ten, twelve" telephone calls from jail to multiple individuals. Harris testified that in the "majority" of the calls, he referenced Safar, and he admitted that he wanted someone—"[i]t didn't matter who"—to talk with Safar. In the calls, which were played for the jury, Harris directed various people to talk to Safar at the liquor store. Of particular note, Harris made the following statements:

> [To unidentified woman] I just need [my son Deanthony] to go out, when he make it to the neighborhood to ask [Safar] why he is doing this.

\* \* \*

-1-

[To Deanthony] When you get to Southwest, man I need you to go in that store and ask [Safar] why is he doing this. [Safar] trying to say I pulled a gun out on him and pistol whipped him.

* * *

[To Harris's son Tavion] As soon as you get to the neighborhood, I need you to ask [Safar] why he doin' this to me man. [Safar] at the liquor store.

* * *

[To Tavion] Don't forget what I said, man. You got to get on [Safar's] head. Ask that nigga . . . nigga you act like you like us, nigga why you tryin' to get my daddy like this, dog.

* * *

[To Deanthony] D, when you get out there man I want you to go holla at [Safar]. Don't disrespect me.

On October 11, 2017, the date set for the preliminary examination on the September charges, Safar did not appear and the charges were dismissed. The officer in charge of the case called Safar, who explained his absence. Subsequently, Safar elaborated in a written statement his reasons for not appearing at the preliminary examination. Thereafter, Harris was charged in the present case, and was bound over after a preliminary examination was held. Safar did not testify at the preliminary examination, and the trial court determined that Safar's statements to the police detective were inadmissible hearsay. After the preliminary examination in this case, the prosecution filed a motion to admit Safar's statements under MRE 804(b)(6). The trial court took the motion under advisement and, before trial, ruled that Safar's statements were admissible. Thereafter, at trial, a police detective testified that Safar told him that he did not appear at the October 2017 preliminary examination in the prior case because a few days before the examination a man came to the liquor store and told him that if he went to court he would not be coming back and because the day before the examination two different men came to the store and threatened his life if he went to court.

The jury convicted Harris as charged. This appeal follows.

## II. ADMISSIBILITY OF EVIDENCE

### A. STANDARD OF REVIEW

Harris argues that the trial court abused its discretion by admitting Safar's hearsay statements explaining why he did not appear at the September 2017 preliminary examination. Challenges to the trial court's decision to admit evidence are reviewed for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). A court abuses its discretion when it chooses a result that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). "A trial court necessarily abuses its

direction when it makes an error of law." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

## B. ANALYSIS

Safar's statements are hearsay because they are out-of-court statements "offered in evidence to prove the truth of the matter asserted." See MRE 801(c). Generally, hearsay is inadmissible. MRE 802. Here, the prosecution sought to admit Safar's hearsay statements under MRE 804(b)(6), which provides that if a declarant is unavailable "the hearsay rule" does not preclude admission of "[a] statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." In order to admit hearsay under MRE 804(b)(6), the prosecution must prove by a preponderance of the evidence: "(1) that the defendant engaged in or encouraged wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability." *People v Jones*, 270 Mich App 208, 217; 714 NW2d 362 (2006) (quotation marks, citation, and brackets omitted). These requirements pertain specifically to the language in MRE 804(b)(6), however. They do not excuse the prosecution from its obligation to also establish the witness is "unavailable" as contemplated by MRE 804(a).

MRE 804(a) provides:

(a) **Definition of Unavailability.** "Unavailability as a witness" includes situations in which the declarant—

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) has a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown.

A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

On appeal, the prosecution suggests that Safar was unavailable under subsection (2) or subsection (5). But there is nothing in the record to support a finding that Safar persisted in refusing to testify "despite an order of the court to do so," because there is, in fact, no evidence

that Safar was subpoenaed to testify at Harris's trial in the present case. Accordingly, Safar was not unavailable as contemplated under MRE 804(a)(2).

Further, there is insufficient support in the record to show that Safar was unavailable to testify under MRE 804(a)(5). Whether a witness is unavailable for the purposes of MRE 804(a)(5) depends on whether the prosecution has made a "diligent good-faith effort in its attempt to locate a witness *for trial*." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998) (emphasis added). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*.

In this case, after becoming aware in October 2017 that Safar did not wish to testify against Harris in the September 2017 case (as reflected by his refusal to appear for the preliminary examination and his subsequent explanation that he did not appear because he was threatened), the prosecution presumed that Safar's unwillingness to testify would continue in the present case. In line with that assumption, on its January 17, 2018 witness list and its February 1, 2018 amended witness list, the prosecution indicated that it did not intend to produce Safar as a witness at the trial. Further, there is nothing in the record indicating that Safar was subpoenaed. Instead, in its argument on appeal, the prosecution suggests that because it made diligent efforts to procure Safar's attendance and testimony at the October 2017 preliminary examination in a related, but separate criminal prosecution, it had no obligation to exercise due diligence to procure Safar's testimony for the trial in this case. The prosecution also insists that subpoenaing Safar for trial in this case "would be a fool's errand" because there is nothing to indicate that Harris had "withdrawn his threats of retaliation."

In support of its argument, the prosecution directs this Court to *People v Garay*, 320 Mich App 29; 903 NW2d 883 (2017), holding application for leave to appeal in abeyance 924 NW2d 590 (Mich, 2019). In *Garay*, "two juvenile sisters" received several threats after they testified at the defendant's preliminary examination. *Id*. at 34. After the father of the two sisters refused to allow them to testify at the defendant's trial, the trial court declared the sisters unavailable as witnesses under MRE 804(a)(5) and admitted their preliminary-examination testimonies under MRE 804. *Id*. at 34-35. This Court affirmed the trial court's decision to admit the sisters' preliminary-exanimation testimonies because their father refused to allow them to testify out of his fear for their safety and refused "to respond to the trial court's attempts to contact" the sisters. *Id*. at 36-37. In doing so, this Court recognized that the prosecution had subpoenaed the sisters and made numerous attempts to contact them and their father. *Id*. Further, at one point, the father and his daughters appeared at trial, but quickly left and refused to return. *Id*. at 36. Yet, as detailed above, in this case the prosecution made no effort to procure Safar's availability at Harris's trial.

Thus, notwithstanding that the sisters and Safar were both threatened, the attempts to procure the threatened witnesses for trial is not comparable. *Garray*, therefore, does not support the prosecution's argument in this case. And, on this record, Safar could not be unavailable under MRE 804(a)(5) because there is no evidence that the prosecution made a diligent good-faith effort to procure Safar's testimony for the trial.

We note that the trial court's finding of "unavailability" pertained solely to Safar's "unavailability" at the October 2017 preliminary examination. The court failed to analyze whether that unavailability continued to Harris's trial on subsequently issued charges. However, as is clear from MRE 804(a)(5), the declarant must be "absent from *the* hearing." Consequently, the mere fact that Safar was absent from a prior hearing in a related but separate case does not mean that he is automatically absent from "the" hearing where the hearsay statement is being introduced, i.e., the trial held in this case. In that regard, we are unpersuaded by the prosecution's argument that we cannot "divorce" the proceedings in this case from the September 2017 case. The proceedings are, by their nature, separate legal proceedings. We also explicitly reject the prosecution's suggestion that it can satisfy its obligation to exercise due diligence in one prosecution by subpoenaing a witness in a related, but separate criminal prosecution. The rules of evidence contemplate that the witness must be unavailable for "the" hearing where the hearsay statement will be introduced.

Having determined that the trial court abused its discretion, we turn to whether Harris has met his burden of showing that, " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Lukity*, 460 Mich at 495-496, quoting MCL 769.26. In evaluating whether the error was outcome determinative, this Court must focus "on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *People v Smith*, 456 Mich 543, 555; 581 NW2d 654 (1998) (quotation marks and citation omitted). "An error is deemed to have been 'outcome determinative' if it undermined the reliability of the verdict." *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000) (opinion by KELLY, J.). While MCL 769.26 does not require actual innocence, "it should be viewed as a legislative directive to presume the validity of verdicts and to reverse only with respect to those errors that affirmatively appear to undermine the reliability of the verdict." *People v Mateo*, 453 Mich 203, 211; 551 NW2d 891 (1996). Accordingly, reversal is only required if the error was prejudicial. *Id*. at 215. "That inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *Id*.

Here, the untainted evidence was *sufficient* to allow the jury to find Harris guilty. Specifically, at his arraignment, Harris was ordered to have no direct or indirect contact with Safar. He wholly disregarded that order and directed multiple individuals to contact Safar regarding the case. In one instance, he told the witness to "get on [Safar's] head." Although Harris contended that the reference was slang for "[g]o talk to him," the jury was free to infer a more nefarious meaning behind the words, including that Harris was directing that someone beat up Safar. Harris's mother made actual contact with Safar. The contact was severe enough that Safar threatened to call the police to compel her to leave. The jail calls occurred in close proximity to the date scheduled for the preliminary examination. Finally, the untainted evidence reflects that Safar did not appear at the preliminary examination. Based on this evidence, the jury could infer that Harris called numerous people to contact Safar in order to discourage Safar from testifying at the preliminary examination.

However, although there was sufficient evidence, the most compelling evidence that Harris directed individuals to discourage Safar from testifying at trial is the improperly admitted hearsay evidence. Safar told a police detective that three people came to his place of work and warned him not to go to court or he would not return. He told the detective that because of the

threats to his life, he did not testify at the preliminary examination. In the prosecution's closing argument, the prosecutor relied heavily on the hearsay evidence, stating:

> Ladies and gentlemen, we don't, nor will we know what Mr. Safar would, or would not say, because he never came to court to testify.
>
> We don't know.
>
> The reason we don't know is, and as he told you in his own words, because he felt fear for his family.
>
> Because he told you, in his statement, that a few people had came up to his job, told him, if you go to court, you won't come back.
>
> Don't go to court if you want to feel safe when you leave your place of employment.
>
> * * *
>
> Second, that the defendant threatened or tried to intimidate.
>
> After that, you'll get the definition of threatened.
>
> But tried to intimidate, as I just said, numerous people would come to you, and you're in your place of employment, and you're just trying to do your job, and there's people comin' up, telling you not to go. Not to go to court. You won't be safe. You're not gonna be safe. Don't do it.
>
> That's intimidation.
>
> * * *
>
> You heard the calls.
>
> You heard the statement.
>
> It's not Rocket Science.

The prosecutor also referenced Safar's statements during rebuttal argument. In particular, the prosecutor argued that the jury could determine that Safar's statements—that he was threatened at work—were truthful because they were corroborated by the jail calls where Harris directed people to go to Safar's place of work.

The prosecution's arguments relied so heavily upon Safar's statements because Safar's statements were compelling and substantially prejudicial to Harris's case. The statements provided a direct link between Harris's actions—directing people to go to Safar's place of work—and Safar's decision to not show up at the preliminary examination. Without Safar's statements, the chain of interferences needed to draw a link between Harris's jail calls and Safar's absence was—although sufficient—significantly weaker. In sum, based on an

examination of the whole record, we conclude that the error in this case was outcome determinative and was not harmless.  Accordingly, we vacate Harris's convictions.[1]

Vacated.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

---

[1] Given our resolution, we decline to address Harris's double-jeopardy argument.

However, we note that nothing in our opinion should be construed as preventing the prosecution from again seeking admission of Safar's hearsay statement under MRE 804(b)(6). However, in doing so, the prosecution must establish that Safar is, in fact, unavailable to testify at the hearing where the hearsay evidence is to be admitted.  See MRE 804(a).