*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMARIO DAVONTE WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
May 28, 2020

No. 346386
Wayne Circuit Court
LC No. 18-002181-01-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEMARIO DAVONTE WILLIAMS,

        Defendant-Appellant.

No. 346389
Wayne Circuit Court
LC No. 18-002185-01-FH

Before: BECKERING, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

In these consolidated cases,[1] defendant, Demario Davonte Williams, appeals as of right his bench trial convictions of felonious assault, MCL 750.82; second-offense domestic violence, MCL 750.81(4); and malicious destruction of property, MCL 750.377a(1)(b)(*i*) (Docket No. 346386) and felonious assault, MCL 750.82; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and third-offense domestic violence, MCL 750.81(5) (Docket No. 346389). Defendant argues that he is entitled to a new trial because the trial court erred by

---

[1] The cases were joined in the trial court and tried together. Defendant filed separate claims of appeal, which this Court consolidated. *People v Williams*, unpublished order of the Court of Appeals, entered December 5, 2018 (Docket Nos. 346386; 346389).

admitting statements of an unavailable witness under MRE 804(b) without first holding a hearing to determine if the prosecution had exercised due diligence in attempting to procure the unavailable witness for trial. We affirm defendant's convictions but remand for ministerial correction of defendant's judgement of sentence in Docket No. 346386.

## I. RELEVANT FACTS AND PROCEEDINGS

The complainant in the case underlying Docket No. 346386 is defendant's former girlfriend, KM. KM testified at trial that on February 11, 2018, she was at defendant's home when he became "agitated" because she was using her cellular telephone. Defendant "snatched" KM's cell phone, "threw it, and told [her] to stay off of it." KM said she waited until defendant fell asleep and then retrieved her cell phone. The next day, defendant was showing KM his wallet and she saw his Michigan Department of Corrections (MDOC) card and realized he had lied to her about his name. KM asked defendant why he lied, and she attempted to search his name on the internet using her cell phone. Defendant "snatched" KM's cell phone again and threatened to break it. KM testified that defendant retrieved a gun, "pulled the clip out to show [her] that it was full of bullets," and pointed the gun at her head. Defendant eventually told KM to pack her things and said he was taking her home. Instead of taking her home, defendant drove to a bus stop and told KM to get out of the vehicle. Defendant rolled down the passenger window and threw KM's cell phone into the snow. KM's mother picked her up and they went to the Detroit Police Department to report the incident.

The complainant in the case underlying Docket No. 346389 was defendant's former girlfriend, SB. SB did not appear at trial. At a pretrial hearing held on August 23, 2018, two weeks before trial, the prosecutor informed the trial court that defendant had called SB six times from the Wayne County Jail, and that defendant "is heard on the calls influencing her, telling her not to come to court, telling her if they try to tell you that they are going to threaten you with a case if you don't follow through, don't believe them." The prosecutor also stated that defendant "is also heard on these calls telling relatives, including his brother . . . his grandmother, and his mother, to use and manipulate [SB] . . . to his advantage to get these cases dismissed." The prosecutor argued that if SB failed to appear at trial, she had "more than enough evidence for forfeiture by wrongdoing," and would move to admit SB'S preliminary examination transcript and the statements SB made to the police.

On September 10, 2018, the first day of trial, the prosecutor informed the trial court that she had filed a motion to introduce SB's preliminary examination testimony and statements to the police on the basis of defendant's forfeiture by wrongdoing. Since the pretrial hearing on August 23, 2018, the prosecutor had attempted to subpoena SB, but SB had successfully evaded service. Further, SB wrote the trial court a letter "indicating that she is not going to testify." The trial court found that defendant called SB from jail on July 7, 2018, and stated, "I need you not to fold, you hear me. And indicated that . . . law enforcement would threaten her if she didn't go forward." In another telephone call, made presumably by defendant's brother, defendant said that if SB said she was going to drop the case, "I need you to eat that up, you feel me? I need, like even if you don't like her, you feel me? . . . Eat that . . . up you know, use her, manipulate her, you know what I'm saying?" The court found by a preponderance of the evidence that defendant's wrongdoing was intended and caused SB not to appear at trial and granted the motion.

According to her preliminary examination testimony, SB drove to defendant's home on January 18, 2018 to stay the night. The next morning, as SB was getting ready for work, defendant saw text messages between SB and a male co-worker, became upset, "charged after [her]," and "placed his hands around [her] throat." SB stated that "[a]fterwards he began to punch me in my nose twice; in my eye once; on my jaw once." When SB attempted to leave, defendant started "bludgeoning" her on her head and ear with the lock that held her car keys. When SB was able to leave, she first went home, and then drove to St. Mary's Hospital for medical attention.

## II. ANALYSIS

Defendant argues on appeal that the trial court erred by admitting SB's preliminary examination testimony and statement to the police without first holding a due diligence hearing to determine if SB was, in fact, unavailable. We disagree.

As an initial matter, we note that defendant arguably waived this issue when his defense attorney agreed that the trial court could admit SB's preliminary examination testimony and statements to the police into evidence at trial. Waiver is defined as "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Id.* On the first day of trial, the prosecutor moved to admit SB's preliminary examination transcript and statements she made to the police because of forfeiture by defendant's wrongdoing. In response, defense counsel stated, "I have seen these jail calls, I have heard the jail calls, I have seen the transcript from the jail calls, I can't argue with that." Because defense counsel "clearly expressed satisfaction," with the admission of SB's preliminary examination testimony and statements made to the police, this issue is waived for appellate review. *Id.*

Even if we interpreted counsel's statement of satisfaction as extending only to the prosecution's evidence that defendant had encouraged SB not to appear at trial, but not to whether the prosecution had exercised due diligence in producing her for trial, defendant failed to preserve the issue by objecting to admission of the evidence without a due diligence hearing. See *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Generally, "[w]hen the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but we review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). However, because the issue presented has not been preserved for review, this Court must review the "unpreserved claim for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* As such, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.* (quotation marks and citations omitted).

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is generally not admissible unless an exception to the rule applies." *People v Johnson*, 315 Mich App 163, 193; 889 NW2d 513 (2016). "MRE 804(b)(6) provides an exception to the hearsay rule for a statement by a declarant made unavailable by the opponent." *People v Jones*, 270 Mich App 208, 212; 714 NW2d 362 (2006). To admit hearsay under MRE 804(b)(6), the prosecution must prove by a preponderance of the evidence: "(1) that the defendant engaged in or encouraged wrongdoing, (2) that the wrongdoing was intended to procure the declarant's unavailability, and (3) that the wrongdoing did procure the unavailability." *Id.* (quotation marks and citation omitted). A declarant is considered unavailable if the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5). The test for unavailability under MRE 804(a)(5) is that the proponent "must have made a diligent good-faith effort in its attempt to locate a witness for trial." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id.*

Defendant does not challenge the trial court's finding that defendant's wrongdoing caused SB's unavailability at trial. Instead, defendant asserts that the trial court erred in admitting SB's preliminary examination testimony and statements to police without holding a due diligence hearing to determine if the prosecution had exercised diligence in attempting to secure SB's appearance at trial. On the record before us, we cannot say that the trial court committed plain error by admitting the subject evidence without holding a due diligence hearing.

A prosecutor fails to show due diligence if his or her efforts to procure difficult-to-locate witnesses are truly "tardy or incomplete," *People v Dye*, 431 Mich 58, 62; 427 NW2d 501 (1988), or when the prosecutor has waited until the first day of trial to locate a witness with whom he or she has had no contact for years, *People v James*, 192 Mich App 568, 572; 481 NW2d 715 (1992). Neither of these circumstances are present here. The prosecutor in the present case did not have reason to believe that SB would become unavailable until shortly before trial. She had appeared voluntarily and testified at the preliminary examination five months before trial, and she gave no indication to the prosecutor that she did not intend to testify at trial. There were no signs that SB would refuse to testify until approximately two weeks before trial.

Once the prosecutor became aware that defendant was threatening SB, the prosecutor's efforts were neither "tardy nor incomplete" *Dye*, 431 Mich at 62, nor confined to the very last minute, *Jones*, 192 Mich App at 572. Defendant started calling SB from jail on July 7, 2018, encouraging her not to testify at trial. The prosecution pulled the call records from the jail and, at the August 23, 2018 pretrial hearing, informed the trial court that it had recently learned that defendant had been calling SB from jail "influencing her, telling her not to come to court, telling her if they try to tell you that they are going to threaten you with a case if you don't follow through, don't believe them." The prosecutor informed the trial court that defendant "is also heard on these calls telling relatives, including his brother . . . his grandmother, and his mother, to use and manipulate [SB] . . . to his advantage to get these cases dismissed." Subsequently, the officer in charge of the case attempted to contact and subpoena SB, but, SB successfully evaded service. In addition, SB sent the trial court a letter indicating her unwillingness to testify.

Whether the prosecution made a "diligent good-faith effort" to secure a witness's appearance at trial depends on the facts and circumstances of each case. *Bean*, 457 Mich at 684. Although the trial court did not hold a due diligence hearing, it is clear from the record that the prosecutor kept the trial court apprised of the situation. In addition, the reasons for the witness's non-appearance are apparent from the record, as are the prosecutor's efforts to secure her appearance. Further, defendant has failed to suggest what other reasonable measures the prosecution might have taken to secure SB's appearance at trial. Under the circumstances, we do not find that the trial court plainly erred by failing to hold a due diligence hearing.

Upon review of this appeal we noticed that the judgment of sentence in Docket No. 346386 erroneously identifies defendant's convictions as being derived from guilty pleas, rather than a bench trial. We remand for the ministerial correction of the judgment of sentence.

Convictions affirmed, case remanded for the ministerial correction of the judgment of sentence in Docket No. 346386. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro